UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JANETTE BETH O'CONNOR

                     Plaintiff,

       v.                                          Case # 19-CV-696-FPG
                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

## INTRODUCTION

Plaintiff Janette Beth O'Connor brings this action pursuant to Title XVI of the Social Security Act seeking review of the denial of her application for Supplemental Security Income ("SSI").

Plaintiff protectively applied for SSI on July 31, 2014, alleging disability since that date due to ankylosing spondylitis,[1] asthma, and panic/anxiety issues. Tr.[2] 17, 75, 194. After the Social Security Administration ("SSA") denied her application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 14-59. On September 8, 2017, the ALJ issued an unfavorable decision. Tr. 72-89. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed to this Court. Tr. 1-5; ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the following reasons, Plaintiff's motion, ECF No. 8, is

---

[1] "Ankylosing spondylitis is a form of ongoing inflammation (chronic inflammatory arthritis) that primarily affects the spine. This condition is characterized by back pain and stiffness that typically appear in adolescence or early childhood. Over time, back movement gradually becomes limited as the bones of the spine (vertebrae) fuse together. This progressive bony fusion is called ankylosis." NIH: U.S. NATIONAL LIBRARY OF MEDICINE, ANKYLOSING SPONDYLITIS, https://ghr.nlm.nih.gov/condition/ankylosingspondylitis (last visited July 6, 2020).

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

DENIED, the Commissioner's motion, ECF No. 10, is GRANTED, and this matter is DISMISSED WITH PREJUDICE.

## LEGAL STANDARD

### I. District Court Review

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Standard

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of the

claimant's age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Lesterhuis v. Colvin*, 805 F.3d 83, 85 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.920.

## DISCUSSION

### I.   The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. Tr. 77. At step two, the ALJ found that Plaintiff has the severe impairments of ankylosing spondylitis, asthma, and depressive and anxiety disorders. Tr. 77. At step three, the ALJ found that none of Plaintiff's impairments meet or medically equal the criteria of any Listings impairment and determined that Plaintiff retains the RFC to perform light work with additional postural and exertional restrictions. Tr. 78-84. At step four, the ALJ found that Plaintiff has no past relevant work, and at step five, the ALJ found that Plaintiff can adjust to other work that exists in significant numbers in the national economy. Tr. 84-85. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 85.

### II.   Analysis

#### A.   Treating Physician Rule

Plaintiff first argues that the ALJ failed to give "good reasons" for discounting the opinion of one of Plaintiff's treating physicians, Qamrunnisa Rahman, M.D. The Court disagrees.

On May 31, 2017, Dr. Rahman, Plaintiff's primary care doctor, filled out a "treating physician's functional capacity assessment" form. Tr. 383. On the form, Dr. Rahman indicated that Plaintiff could lift no more than ten pounds, could push and pull for no more than fifteen minutes per day, could stand/walk less than two hours per day, and could sit less than six hours a day. Tr. 383. Dr. Rahman further indicated that Plaintiff would have to lie down two to three

times over the course of an eight-hour workday.  Tr. 383.  The ALJ gave Dr. Rahman's opinion "little weight," finding that it was not supported by Dr. Rahman's own treatment notes and was not supported by other medical evidence in the record, including the treatment notes of Plaintiff's treating rheumatologist, Edgardo Salvador, M.D.  Tr. 83.  Plaintiff argues that the ALJ's analysis of Dr. Rahman's opinion was erroneous.

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ may discount a treating physician's opinion if it does not meet this standard but must give "good reasons" for doing so.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Generally, "when assigning less than 'controlling weight' to the treating physician's opinion, the ALJ must 'explicitly consider' the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008)."  *Guerra v. Saul*, 778 F. App'x 75, 76 (2d Cir. 2019) (summary order) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).  These factors are "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion;  (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Estrella*, 925 F.3d at 96 (quotation marks, citation, and brackets omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  An ALJ commits procedural error by failing to explicitly consider each of these factors, but the error will be considered harmless and the reviewing court will affirm if "a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment."  *Guerra*, 778 F. App'x at 77; *see also Estella*, 925 F.3d at 96.

Here, Plaintiff argues that the ALJ did not discuss the first *Burgess* factor. While this is true, the "[f]ailure to explicitly consider every *Burgess* factor is . . . not fatal . . . if the ALJ has nonetheless provided 'good reasons' for [her] weight assessment, such that the substance of the treating physician rule was not traversed." *Connolly v. Berryhill,* No. 3:18-cv-00185 (MPS), 2020 U.S. Dist. LEXIS 27018, at *9 (D. Conn. Feb. 18, 2020) (internal citations and quotation marks omitted). The ALJ did, however, discuss the second and third factors, and the Court finds that her analysis of these factors offered sufficiently good reasons for giving Dr. Rahman's opinion less than controlling weight.

The ALJ considered the second *Burgess* factor, the amount of medical evidence supporting Dr. Rahman's opinion. The ALJ found that Dr. Rahman's treatment notes showed only "well-controlled asthma and occasional complaints of mild musculoskeletal pain." Tr. 83, 395-407, 579-602. Substantial evidence supports the ALJ's finding. Treatment notes for ten visits to Dr. Rahman between June 2013 and January 2017 indicate that Plaintiff reported musculoskeletal pain only on four occasions. Tr. 385, 401, 408, 416. During the other six visits, Dr. Rahman either did not note anything about musculoskeletal pain or indicated that Plaintiff had no reports of pain. Tr. 389, 392, 396, 405, 411, 413. Dr. Rahman does not even appear to have treated Plaintiff for her ankylosing spondylitis: most of Plaintiff's visits to Dr. Rahman during the relevant time period were for matters unrelated to that condition, such as a cold/flu, a suspected tick bite, asthma, depression, and bronchitis. Tr. 389, 392, 396, 405, 411, 413. Dr. Rahman referred Plaintiff to Dr. Salvador for treatment of her ankylosing spondylitis. *See, e.g.*, Tr. 303. Nothing in Dr. Rahman's treatment notes document the type of extreme limitations Dr. Rahman endorsed on the functional capacity assessment form.

The Court finds that this is a "good reason" for discounting Dr. Rahman's opinion. An ALJ may reject opinion evidence that is not well-supported by the medical evidence. *See, e.g.*, *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order) (holding that the ALJ did not err in discount treating physician's opinion because it conflicted with source's own treatment notes); *Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (summary order) ("[T]he ALJ acted within her discretion in according the [treating physician's and nurse practitioner's] opinions little weight because record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in these opinions."); *Sanders v. Comm'r of Soc. Sec.*, No. 1:18-cv-1402-DB, 2019 U.S. Dist. LEXIS 198659, at *12 (W.D.N.Y. Nov. 15, 2019) ("[A] treating source's opinion is not entitled to controlling weight when it [is] not consistent with the source's own treatment notes . . . .").

The ALJ also discussed the third *Burgess* factor, the consistency of Dr. Rahman's opinion with other evidence in the record. The ALJ found that Dr. Rahman's opinion was not supported by the treatment notes of Plaintiff's treating rheumatologist, Dr. Salvador. While Dr. Salvador did not submit a formal opinion, his treatment notes usually included an "assessment" section in which he repeatedly characterized Plaintiff's ankylosing spondylitis as mild, stable, and well-controlled with medicine. Tr. 268, 271-72, 274-76, 281, 284-92, 295-98, 301, 304, 306, 308, 832, 835, 838, 840, 842, 845, 848, 850, 852, 855, 857. A few early treatment notes from 2010 show that Plaintiff reported severe pain, Tr. 308, 306, but later treatment notes show that Plaintiff described her pain in milder terms. *See, e.g.*, Tr. 271-72, 831, 83, 838. Dr. Salvador's treatment notes also demonstrate that Plaintiff's medication was working, because when she missed a dose, her pain increased, and when she restarted her medication, her symptoms stabilized. Tr. 848, 850, 852. Dr.

Salvador repeatedly opined that Plaintiff was "doing well" on her medication and that she was not limited in her activities of daily living. Tr. 311, 295-96, 278, 838, 840, 855.

Plaintiff contends that Dr. Rahman's opinion is consistent with Dr. Salvador's findings that Plaintiff consistently displayed lumbosacral, knee, elbow, foot, and hip tenderness, straightening of the lumbar lordosis, lumbar spine muscle spasms, and decreased cervical, lumbar, and hip range of motion. ECF No. 8 at 21; ECF No. 13 at 5; Tr. 269, 272, 785, 790, 793, 800, 803, 809, 812, 839-40, 859. The Court disagrees. Plaintiff here is interpreting raw medical data, which laypersons are not qualified to do. *See generally Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (explaining that an ALJ, as a layperson, is not qualified to assess a claimant's RFC based on bare medical findings). Further, despite these findings, Dr. Salvador continually assessed Plaintiff's ankylosing spondylitis as mild and noted that she was not impaired in activities of daily living. His treatment notes and medical findings are not consistent with disabling symptoms.

The Court finds that the inconsistency between Dr. Rahman's opinion and Dr. Salvador's notes also constitutes a "good reason" for discounting Dr. Rahman's opinion, particularly because Dr. Salvador is a specialist[3] who specifically treated Plaintiff's ankylosing spondylosis, whereas Dr. Rahman is Plaintiff's primary care physician. It was appropriate for the ALJ to rely on Dr. Salvador's specialist treatment notes over Dr. Rahman's non-specialist opinion. *See Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) ("The regulations provide that an opinion of a specialist regarding medical issues related to his or her area of specialty must be given more weight than the opinion of a source who is not a specialist.") (citing 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5)).

---

[3] Although the ALJ did not directly discuss the fourth *Burgess* factor, specialty, the ALJ referred to Dr. Rahman as Plaintiff's primary care doctor, Tr. 82- 83, and referred to Dr. Salvador as Plaintiff's rheumatologist, Tr. 81-84.

In sum, the Court finds that the ALJ offered good reasons for discounting Dr. Rahman's opinion and a review of the record assures the Court that the treating physician rule was not violated. *See, e.g.*, *Kavanaugh v. Saul*, No. 3:18-cv-01521 (MPS), 2020 U.S. Dist. LEXIS 42939, at *11 (D. Conn. Mar. 12, 2020) ("Even if the ALJ committed procedural error in failing to consider all of the *Burgess* factors explicitly, he provided good reasons for dismissing [the treating physician's] opinion and thus did not violate the treating physician rule."); *Nunez v. Saul*, No. 3:18-cv-1952 (VLB), 2020 U.S. Dist. LEXIS 34377, at *25 (D. Conn. Feb. 28, 2020) ("[A]lthough the ALJ did not expressly address all of the *Burgess* factors, the ALJ did not traverse the treating physician rule because he provided 'good reasons' for applying little weight to [the treating physician's] opinion because it was inconsistent with the record as a whole, including [the treating physician's] own treating notes."); *Baker v. Saul*, No. 3:18-cv-1759 (MPS), 2020 U.S. Dist. LEXIS 24298, at *16 (D. Conn. Feb. 12, 2020) ("[W]hile the ALJ did not specifically consider all the *Burgess* factors when assigning [the treating physician's] opinion little weight, the error is harmless because the ALJ provided sufficient 'good reasons.'"). Accordingly, the Court declines to remand on this basis.

**B.     Flares**

Plaintiff next argues that the ALJ erred by ignoring evidence that Plaintiff experiences "flares" in her symptoms which inhibit her ability to work on a regular and continuing basis. Again, the Court disagrees.

In support of this argument, Plaintiff relies only on her hearing testimony indicating that she experiences "flare-ups" of pain several days a month. Tr. 39-40. She testified that these flares cause her so much pain that she is not able to get out of bed and cannot walk without a walker. Tr.

39-40. She also testified that even on non-flare days, she naps once or twice a day and also needs to recline several times a day. Tr. 38, 40-41.

Plaintiff argues that the ALJ ignored or understated this evidence. The Court disagrees. The ALJ did not regurgitate Plaintiff's testimony verbatim, but she did not ignore it. The ALJ simply found that Plaintiff's allegations about the severity of her symptoms were not supported by the treatment notes of any provider. None of Plaintiff's doctors ever prescribed a walker for her or ever mentioned that she had impaired gait. As noted above, Plaintiff's treating rheumatologist, Dr. Salvador, repeatedly characterized her impairment as "mild" and under the control of her medication. Tr. 81, 789, 794, 796, 805, 807, 838. Plaintiff does not appear to have reported to her doctors the disabling degree of symptoms she endorsed at her hearing. The ALJ was thus entitled to conclude that Plaintiff's testimony was inconsistent with the record evidence. *See McQuillan v. Saul*, No. 3:19-cv-00191 (SRU), 2020 U.S. Dist. LEXIS 57011, at *45 (D. Conn. Apr. 1, 2020) (explaining that, while an ALJ is required to take a claimant's reports of pain into account, the ALJ is not required to accept the claimant's subjective complaints of pain without question, and "[w]hen a discrepancy exists between the medical evidence and testimony, the ALJ is entitled to resolve that discrepancy"). Accordingly, the Court finds that remand is not required based on this argument.

### C. New Evidence

Finally, Plaintiff argues that the Appeals Council erred by failing to remand after Plaintiff submitted new evidence generated after the ALJ's decision. The new evidence consists of treatment notes from Dr. Salvador dated October 2017 through March 2019 and records from Ken-Ton Family Care generated from December 2017 and December 2018. Tr. 861-85, 904-22, 929-31, 945-47. Plaintiff asserts that, although these records do not relate to the relevant time period

before the ALJ's decision, they nevertheless bear on the continuity and progression of Plaintiff's impairments and thus should be considered as a new evidence.

> The Appeals Council must consider "new" and "material" evidence if it "relates to the period on or before the date of the administrative law judge hearing decision" and there is "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "For example, subsequent evidence of the severity of a claimant's condition may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.'" *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (quoting *Pollard*, 377 F.3d at 193)). However, evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council.

*Fleming v. Comm'r of Soc. Sec.*, No. 1:19-CV-00028 EAW, 2020 U.S. Dist. LEXIS 79010, at *8-9 (W.D.N.Y. May 5, 2020).

Here, the new evidence was generated after the relevant time period and does not relate to the relevant time period. But even if the Court concluded that the evidence did relate to the relevant time period, the Court nevertheless finds that there is not a reasonable probability that it would change the outcome of the decision. Dr. Salvador's additional treatment records continue to assess Plaintiff's condition as "stable, in "good control," and without "increase in lower back and peripheral joint pains, stiffness, or swelling." Tr. 906, 909, 911, 917, 921. Although two of the new treatment notes indicated that Plaintiff had symptomatic pains, spasms, and arthritis, Dr. Salvador noted that trigger point cortisone injections provided significant relief. Tr. 931, 947. Additionally, while some of the new records from Ken-Ton Family Care indicate that Plaintiff experiences pain from her ankylosing spondylitis, Tr. 867, they also note that she "follows [up] with a rheumatologist on a regular basis regarding her ankylosing spondylitis and is doing well on the current regimen." Tr. 861. These records recommend that Plaintiff continue with her current medications and continue to follow up with her rheumatologist as treatment. Tr. 869. They do

not include any opinions regarding functional limitations. Accordingly, the Court finds that remand on this basis is not warranted.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 8, is DENIED, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 10, is GRANTED, and Plaintiff's Complaint, ECF No. 1, is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 7, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court